**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DAVID KNIGHT,**

        **Plaintiff,**

v.                          **CASE NO.: 8:13-cv-310-T-35EAJ**

**PAUL & RON ENTERPRISES, INC.,**
**d/b/a TRI-COUNTY POOLS, a**
**Florida Profit Corporation,**

        **Defendant.**

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Middle District of Florida, Plaintiff David Knight ("Plaintiff" or "Knight") files his instant Motion for Summary Judgment and Incorporated Memorandum of Law and states as follows:

## INTRODUCTION

It is undisputed that Plaintiff regularly worked in excess of forty (40) hours per week and that Defendant failed to pay him premium overtime compensation nonetheless. Defendant maintains that Plaintiff was administratively exempt from the overtime provisions of the Fair Labor Standards Act. However, discovery is now complete in this case, and the record does not support Defendant's claim of exemption.

It is black letter law that Defendant is charged with carrying the significant burden of establishing its claimed exemption—which is to be narrowly construed against the employer, and in favor of the employee. By this motion, Plaintiff seeks summary judgment finding that Plaintiff is not administratively exempt because the record evidence before this Court establishes

that: (1) Plaintiff was not paid on a "salary basis," because his weekly wages were subject to deduction based on the quantity of work performed; (2) Plaintiff's primary duty for Defendant was production, and not "the performance of office or non-manual work directly related to Defendant's management or general business operations or its customers;" and (3) Plaintiff's primary job duty did not require the exercise of discretion and independent judgment **with respect to matters of significance** on Defendant's behalf, but rather that Plaintiff was responsible for making basic observations and following predetermined guidelines and protocols established by Defendant to perform his duties.  As further discussed below, multiple district courts from around the country have confirmed this exact conclusion based upon nearly identical facts to the instant matter.  Plaintiff also seeks summary judgment finding: (1) Defendant was an enterprise subject to coverage under the FLSA; and (2) Defendant's failure to pay Plaintiff overtime wages was willful, such that Plaintiff is entitled to liquidated damages.

Here, Defendant cannot point to a single shred of actual evidence that would preclude a finding of summary judgment in favor of Plaintiff with respect to the issues above, and for this reason, Plaintiff's Motion should be granted in its entirety.

<u>**STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

1.     Plaintiff filed this action pursuant to the FLSA on February 1, 2013, seeking unpaid overtime wages, liquidated damages, and attorneys' fees and costs.  *See* Complaint, D.E. #1.

2.     From approximately July 2011 through June 2012 Plaintiff worked for Paul and Ron Enterprises, Inc., d/b/a Tri-County Pools ("Tri County" or "Defendant") as a superintendent. *See* Declaration of David Knight ("Knight Decl."), attached hereto as **EXHIBIT A**, at ¶4.

3.      Tri County is in the business of providing custom pool and spa construction and re-modeling services, and has been in such business for approximately twenty-four (24) years. *See* Tri-County's Website, www.tricountypools.com, relevant portions attached hereto as **EXHIBIT B**.

4.      Tri County is owned by Pat Matthews and Tammy Larson. *See* Deposition of Pat Matthews ("Matthews Depo"), attached hereto as **EXHIBIT C**, at 20: 16-18.

5.      While employed as a superintendent for Defendant, Plaintiff was paid weekly wages that varied, but generally such wages were between $800.00 to $900.00 per week. *See* Knight Decl., at ¶5.

6.      During his employment with Defendant, Plaintiff regularly worked approximately forty-five (45) to sixty (60) hours per week. *See id.*, at ¶6; *see also* Court Interrogatories, D.E. #16.

7.      Plaintiff was not paid time and one-half his regular rate of pay for any hours worked in excess of forty (40) per workweek, at any time during his employment with Defendant. *See id.*, at ¶¶6, 46.

8.      Defendant did not typically keep any record of the hours Plaintiff worked each week. *See id.*, at ¶47.

9.      In work weeks in which Plaintiff worked fewer than forty (40) hours per week, Defendant made unilateral deductions to Plaintiff's wages.  *See id.*, at ¶7; Matthews Depo., at 119: 9-16; *see also* Paystub for Pay Period February 2, 2012 through February 9, 2012 and corresponding Email dated February 7, 2012, attached hereto as **EXHIBIT D**.  Moreover, such deductions were made in partial day increments, corresponding to days on which Plaintiff worked, but worked less than a full day.  *See id.*

10.     Plaintiff had no involvement in the drafting or enforcement of Defendant's management policies and general business operations. *See id.*, at ¶11.

11.     Plaintiff had no involvement whatsoever with Defendant's taxes, finances, accounting, budgeting, auditing, insurance, advertising, marketing, personnel management, human resources, employee benefits, labor relations, public relations, government relations, IT department, and/or legal/regulatory compliance. *See id.*, at ¶12. Plaintiff was not asked, nor did he offer, any input into any of these areas of Defendant's business operations. *See id.*, at ¶13. Rather, Defendant had other employees who handled these tasks on behalf of Defendant.  *See* Matthews Depo, at 21: 10-15, 29: 1-17, 30: 1-3.

12.     Specifically, Pat Matthews was responsible for Defendant's sales, accounting, budgeting, human resources, finances, operations and payroll. *See id.*

13.     Similarly, Tammy Larson was responsible for ordering, inventory, bookkeeping, accounting, and payroll. *See id.*, at 21: 4-6, 29: 10-15, 41: 9-10.

14.     As a superintendent, Plaintiff's primary responsibility involved the production of the very product Defendant exists to provide: custom-built pools. *See* Knight Decl., at ¶14.

15.     Plaintiff had no authority to negotiate, enter into, or execute contracts on behalf of Defendant with Defendant's customers, to build pools. *See id.*, at ¶¶15-16.   Rather, all of Defendant's contracts are negotiated by Pat Matthews. *See* Matthews Depo, at 45: 2-12.

16.     All of the contracts specifically lay out the scope of work to be performed by Defendant. *See* Matthews Depo, 45: 25-46: 24, 47: 7-11, 49: 18-23, 51: 10-12; *see also* Knight Decl., at ¶18. Specifically, every contract included terms for, among others: payment schedules, equipment to be used, general materials to be used, type of pool decking to be used, pool size,

pool design, price, and legal regulations. *See* Matthews Depo, at 45: 25-46: 24, 47: 7-11, 49: 18-23, 51: 10-12; *see also* Knight Decl. at ¶18.

17.    When Defendant entered into a new contract with a customer, the negotiation process would begin with Tammy Larson scheduling a meeting between Defendant's customer and Pat Matthews.  *See* Matthews Depo, at 42: 19-44:21. At this initial meeting, Pat Matthews and Defendant's customer would discuss the design Defendant's customer was interested in, and Pat Matthews would then draw a blueprint of these specifications and send it to Defendant's customer for approval and review. *Id*.

18.    Plaintiff was not involved in the negotiating process when a customer entered into a new contract with Defendant, and Plaintiff did not have the authority to negotiate any of the terms in the contracts between Defendant and Defendant's customers. *See* Knight Decl. at ¶¶17, 19.  Similarly, Plaintiff did not design the pools or the specifications of same.  *See id.*

19.    Upon approval of the design and specifications Pat Matthews created, Defendant and Defendant's customer then entered into a contract for the construction of a pool. *See* Matthews Depo, at 44: 19-21.

20.    Each contract had three signature lines: one for Defendant's customer, a "submitted signature" line for Defendant's salesperson, and an "approval line" for Pat Matthews. *See id*., at 44: 22-45:12.

21.    Pat Matthews was the only individual with the authority to sign the approval line on behalf of Defendant. *See id*., at 45: 11-12. Plaintiff lacked the authority to execute any contract with Defendant's clients on behalf of Defendant. *See* Knight Decl., at ¶¶15-16.

22.     Defendant's permitting agency required inspections, and Plaintiff's role in such inspections was limited to calling the local inspection office and confirming a date and time when an inspector would appear to conduct the investigation. *See id.*, at ¶¶20-22.

23.     Plaintiff did not perform the inspections required by the permitting agency himself.  *See id.* Rather, the permitting agency inspections were performed by an inspector the municipality and/or permitting agency sent out for same. *See id.*

24.     The municipality and/or permitting agency was responsible for safety compliance, and performed specific inspections relating to same, which included a child safety inspection and screen enclosure inspection. *See id.*, at ¶23.

25.     Tri County did not maintain its own internal safety regulations. The only safety regulations Tri County followed were set by the parameters of the permitting agency and/or other local ordinances. *See id.*, at ¶24.

26.     To the extent Plaintiff ever selected any subcontractors/installers to perform a pool installation, Plaintiff's choice of such sub-contractors was limited to a list of those sub-contractors that had been pre-approved and pre-authorized by Defendant. *See id.*, at ¶25.

27.     Plaintiff did not have the authority to select a subcontractor/installer who was not previously pre-approved by Defendant. *See id.*, at ¶26.

28.     Moreover, Plaintiff never hired a subcontractor/installer who was not already authorized/approved by Defendant. *See id.*, at ¶27.

29.     Plaintiff did not create, amend, or revise Defendant's policies for hiring or dealing with subcontractor/installers. *See id.*, at ¶28.

30.     Plaintiff had no power to determine the amount of money Defendant paid to its subcontractor/installers to perform installations, or the terms under which they were hired. *See id.*, at ¶29.

31.     In 2010, 2011, and 2012, Tri-County Pools had gross annual revenues in excess of $500,000.00. *See* Matthews Depo, at 37: 17-25.

32.     Defendant regularly installed marble in the pool and spa constructions it performed for Defendant's clients. *See* Knight Decl., at ¶32.

33.     All marble that Defendant purchased, handled, or otherwise worked on was manufactured outside the state of Florida. *See id.*, at ¶33.

34.     At all times throughout Plaintiff's employment, Defendant employed two (2) or more employees who handled or otherwise worked on the marble Defendant purchased for use in its installations. *See id.*, at ¶34.

35.     Plaintiff did not schedule installations, determine the type or volume of materials, order materials for installations, or create the job work orders which dictated the scope and price of the work he was overseeing. *See id.*, at ¶35.

36.     Plaintiff's sole "quality control" responsibilities pertained to insuring that the installations performed by Defendant's subcontractor/installers met the specifications laid out in the contracts entered into by Defendant and Defendant's customers. *See id.*, at ¶36.

37.     Plaintiff was not responsible for creating these pre-determined standards, nor did he give any input regarding same.  Rather, these specifications and standards were previously agreed upon by the Defendant, the Defendant's customer, state requirements, and general industry standards. *See id.*, at ¶37.

38.     The primary duty of Plaintiff's job was babysitting the progress of the different jobs to which he was assigned, by monitoring the various stages of production. In this role, his job was to perform ordinary inspection work. *See id.*, at ¶38.

39.     For inspections, Plaintiff visually inspected the work performed by Defendant's subcontractor/installers to ensure the work conformed with the standards set by Defendant, Defendant's customer, state requirements, and general industry standards. This determination did not require any special skill set, and Plaintiff did not exercise any independent discretion or judgment when performing these inspections. *See id.*, at ¶¶39-40.

40.     The only skill set required of Plaintiff for these inspections was the skill of observation, as Plaintiff was essentially looking at an installation site to determine whether it complied with pre-determined standards. *See id.*, at ¶41.

41.     In addition to ensuring the subcontractor/installers performed their work per the relevant standards, Plaintiff also performed manual labor for approximately 10-12 hours per week, performing minor repairs to the installations. *See id.*, at ¶43.

42.     In March 2009, owner Pat Matthews filed a lawsuit against Defendant Tri County alleging violations of the FLSA. *See* March 2009 Complaint, attached hereto as **EXHIBIT E**; *see also* Matthews Depo, at 94: 24-95: 23.

43.      Approximately two years later, after the case was settled, Pat Matthews returned to work at Tri County and became the owner. *See* Matthews Depo, at 94: 24-95: 23.

44.     Despite being placed on notice of its requirements under the FLSA, Defendant failed to consult with the Department of Labor to establish whether its pay practices were legal, nor did Defendant make any efforts to attend any FLSA seminars or informational sessions. *See id.,* at 100: 7-18.

## MEMORANDUM OF LAW

### I.      Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (further citation omitted). As demonstrated below, Defendant's exemption defense fails here, because Defendant cannot meet it burden with regard to any of the three (3) required elements of the administrative exemption.

### II.     FLSA Exemptions Must be Construed Narrowly Against the Employer and in Favor of the Employee.

The well-established standards for scrutinizing summary judgment motions apply even more restrictively when a Defendant asserts an exemption to overtime payment under the FLSA. Specifically, it has long been established that coverage under the FLSA should be broadly construed in favor of the employee, and exemptions narrowly applied against an employer. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Powell v. United States Cartridge Co.*, 339 U.S. 497, 516 (1950); *see also Hogan v. Allstate Ins. Co.,* 361 F.3d 621, 625 (11th Cir.2004) (*citing Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta,* 920 F.2d 800, 804 (11th

Cir.1991)). That is, the employer bears the heavy burden to prove that a particular exemption applies by "clear and affirmative evidence," and if the record is unclear as to one or more of the exemption's requirements, the employer will be held not to have satisfied its burden and summary judgment must be denied. *See Birdwell v. City of Gadsden,* 970 F.2d 802, 805 (11th Cir.1992).[1]

### III. The FLSA Makes Clear that Production Employees Like Plaintiff Are Not Administratively Exempt.

In order to meet its burden to demonstrate that an employee is administratively exempt, an employer must prove that: (1) he is paid a salary of $455 per week or higher; (2) his "primary duty is the performance of office or non-manual work directly related to management policies or general business operations of the employer of the employer's customers"; and (3) his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a); 29 U.S.C. § 213(a)(1). The qualifications under this exemption are conjunctive, and must **all** be met before an employee is to be defined as exempt. *Lang v. Midwest Advanced Computer Services, Inc.*, 506 F. Supp. 595 (E.D. Mich. 1981). As further discussed below, Defendant cannot meet its burden to demonstrate any one of the three elements necessary to establish is exemption defense, let alone all three together.

### a. Plaintiff Was Not Paid the Requisite $455 Per Week on a "Salary Basis."

Under the Secretary of Labor's regulations, the "bona fide executive, administrative, or professional" employees exemption applies only to employees paid a specified minimum amount on a "salary basis," which requires that the "compensation ... not [be] subject to reduction

---

[1] Exemptions are to be construed narrowly based upon the basic premise of the FLSA- that a forty (40) hour week should be the norm, not the exception- for American workers. The twin purposes of the overtime requirements of the FLSA are to: (i) to compensate workers at higher rates if they are indeed required to work over forty (40) hours in a week; and (ii) spread employment around by discouraging employers from making their workers put in long hours in excess of forty (40) hours per week. *See Overnight Motor Transport v. Missel,* 316 U.S. 572, 577-78 (1942).

because of variations in the quality or quantity of the work performed." *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 907, 137 L. Ed. 2d 79 (1997). The Secretary of Labor interprets this salary-basis test to deny exempt status when employees are covered by a policy that permits deductions in pay "as a practical matter," which the Secretary has said is met where there is an actual practice of making such deductions. *Id.* at 461.

Here, it is indisputable that Plaintiff's pay was subject to pay deductions based on the quantity of the work he performed.  For example, in the pay period covering February 3, 2012, through February 9, 2012, Defendant made a partial day deduction to Plaintiff's pay, and paid him for only a half-day of work on February 7, 2012, because he failed to work a full 8 hours. *See* **EXHIBIT D**. Importantly, Defendant does not dispute this, and concedes that it made a partial day deduction to Plaintiff's pay, because he left work early on that day to pick his daughter up from the airport. *See* Matthews Depo., 119: 9-16. Because Defendant acknowledges that Plaintiff's pay was subject to partial day deductions, and indeed that it made such deductions to his pay, Defendant cannot demonstrate the requisite "salary basis" and its claim regarding the administrative exemption fails on this grounds alone.

### b. Plaintiff's Primary Duty Was Not Related to Management or General Business Operations of Defendant or Defendant's Customers.

While Defendant's exemption argument fails because Plaintiff was not paid on a "salary basis," it also cannot make out its burden on either of the "duties" prongs of the administrative exemption either.  To that end, none of Plaintiff's duties, let alone his "primary duty," related to the "management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). Pursuant to 29 C.F.R. § 541.201(a), the phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee.  To meet this requirement, an employee must perform work directly related to

assisting with the running or servicing of the business, as distinguished, for example, from **working on a manufacturing production line or selling a product** in a retail or service establishment." *See id.* (emphasis added). As this Court has recognized, "[i]n a service industry, production activities relate to the 'primary service goal' of the entity." *Cotten v. HFS-USA, Inc.*, 620 F. Supp. 2d 1342, 1348 (M.D. Fla. 2009). In the instant matter then, Defendant's product is selling and installing custom built spas and pools. *See* Knight Decl., at ¶14.

In applying the "administrative/production dichotomy to determine whether an employee is administratively exempt, courts focus on the employee's day-to-day duties, as well as the nature of the employer's enterprise." *Casas v. Conseco Finance Corp.*, 2002 WL 507059, at *7 (D. Minn. 2002). The distinction has been characterized as distinguishing between "those employees whose primary duty is administering the business affairs of the enterprise" ("administrative") from "those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market" ("production"). *Dalheim*, 918 F.2d at 1230. And, although the phrase "administrative/production dichotomy" may for some people conjure up an image of traditional manufacturing, the case law has long established that this analytic tool applies not only in the traditional manufacturing sectors, but also to employees whose duties are to provide services and who are not involved in the manufacturing of goods. *See Smith v. City of Jackson,* 954 F.2d 296, 299 (5th Cir. 1992) (explaining that the product of a fire department is "fire protection services").

Here, Plaintiff's work involved producing the very product Defendant exists to provide: custom-built pools and spas. *See* Knight Decl., at ¶14. To that end, Plaintiff was not involved in "running or servicing" Tri County, but rather, Plaintiff worked on the production end of Defendant, "babysitting" Defendant's installations, to ensure that the finished jobs were

completed in a timely manner in compliance with general well-accepted industry standards and the specifications set forth in the builder's contracts. *See* Knight Decl., at ¶¶36-42.

Moreover, Plaintiff's duties as superintendent were directly related to Defendant's production activities rather than its general business operations because they were all related to Defendant's primary business goal of building custom pools and spas.  As superintendent, Plaintiff oversaw the various installations on Defendant's job sites to ensure the work was performed in compliance with predetermined standards and specifications. *See id.* These job duties were related to production and were not exempt administrative positions. Indeed, courts in this Circuit, including this Court, have repeatedly held that individuals who work for building or construction companies and are involved in supervising or facilitating the building process are engaged in production work and, therefore, are not administrative employees. *Cotten*, 620 F. Supp. 2d at 1348-49; *Gottlieb v. Construction Servs. & Consultants, Inc.*, No. 05 Civ. 14139, 2006 U.S. Dist. LEXIS 97446, at *16 (S.D. Fla. July 21, 2006).

Likewise, Plaintiff did not have any involvement whatsoever, with any of Defendant's management policies or general business operations. *See* Knight Decl., at ¶11. Specifically, it is undisputed that Plaintiff had no involvement with Tri County's taxes, finances, accounting, budgeting, auditing, insurance, quality control, purchasing, procurement, advertising, marketing, research, safety and health, personnel management, human resources, employee benefits, labor relations, public relations, government relations, computer network, internet and database administration, and/or legal and regulatory compliance. *See id.*, at ¶12.  Simply put, Plaintiff's primary duty was to follow Defendant's predetermined guidelines and standards to ensure that its product was properly installed out the job sites.  In so doing, Plaintiff was a production worker who followed—not drafted—Defendant's guidelines and did not exercise independent discretion

and judgment with regard to matters of significance on Defendant's behalf.  Because Plaintiff's primary duty never related to the management or general business operations of Defendant or Defendant's customers, the administrative exemption is inapplicable. *See Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 814 F.Supp. 2d 1357, at 1364-66.

### c. Plaintiff Never Exercised Discretion or Independent Judgment With Respect to Matters of Significance.

As to the third element of the administrative duties test, it is well settled that "the exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202. The employee's discretion and independent judgment must be exercised with respect to **matters of significance**." 29 C.F.R. § 541.200(a)(3) (emphasis added).  The fact that serious consequences or financial loss to the business may follow from the worker's negligence, failure to follow proper procedures, improper application of skills, or choice of the wrong techniques does not mean that the work requires discretion and independent judgment as that term is used in the regulations.  29 C.F.R. § 541.202(f); *see also Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 906 (3d Cir. 1991) ("We read . . . the regulation as meaning that only employees whose work substantially affects the structure of an employer's business operations and management policies may be characterized as administrative workers."); *see also Dalheim*, 918 F.2d 1220, 1231 (5th Cir. 1990). Similarly, courts have recognized that "[t]he regulations specifically warn against confusing 'the exercise of discretion and independent judgment' with 'the use of skill in applying techniques, procedures or specific standards.'" 29 C.F.R. § 541.202(e); *see also Bothell*, 299 F.3d at 1129.  For this reason, the DOL's current regulations specifically provide that the inspection work which Plaintiff performed as his primary function for Defendant is non-exempt work.  Specifically, 29 C.F.R. § 541.203(g) states:

(g) Ordinary inspection work generally does not meet the duties requirements for the administrative exemption. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits.

29 C.F.R. § 541.203(g).

Plaintiff never exercised discretion or independent judgment with respect to matters of significance. In fact, the undisputed evidence demonstrates that Plaintiff exercised no supervisory responsibilities, and had little or no decision making authority regarding **any** issue—significant or not. As superintendent, Plaintiff had virtually no ability to exercise discretion or independent judgment because he was simply following well-established general industry standards and/or standards predetermined by Defendant and Defendant's customer in the contract for such work, in performing his inspections. *See* Knight Decl., at ¶¶36-42. This reliance on specifications to which his input was neither considered nor warranted in and of itself demonstrates a lack of discretion or independent judgment. 29 C.F.R. § 541.202(e) (the "exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources"); *Gottlieb*, 2006 U.S. Dist. LEXIS 97446, at *19 (citing 29 C.F.R. § 541.202(e)); [CITE] Where, as here, Plaintiff's inspection work consisted simply of comparing the installations to established policies and specifications, the employee is using his experience and skill in the field, and not exercising his discretion and independent judgment. *See Driggers v. Cable Television Installation & Serv., Inc.*, 2009 WL 1684449, at *4 (M.D. Fla. June 16, 2009). Further, and to the extent Plaintiff ever selected subcontractors/installers to perform the predetermined work, Plaintiff was not permitted to exercise his discretion or independent judgment as to which subcontractor/installers to utilize. *See* Knight Decl., at ¶¶27-31. Rather, Plaintiff was required to

choose a subcontractor/installer from a list previously approved and authorized by Defendant. *See id.*

In light of the foregoing, Plaintiff cannot be said to have regularly exercised discretion and independent judgment with regard to matters of significance.  As such, Defendant cannot meet its burden of proof to show that Plaintiff was administratively exempt for this reason either.

### IV.    Defendant is a Covered Enterprise

Under the FLSA, an "enterprise" is defined, in pertinent part, as "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose[.]" 29 U.S.C. § 203(r)(1). The FLSA applies to any enterprise that is engaged in commerce or in the production of goods for commerce and has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and has an annual gross volume ("AGV") of sales made or business that is not less than $500,000.00. 29 U.S.C. § 203(s)(1).

Here, it is undisputed that Defendants had annual gross revenue in excess of $500,000.00 during the periods of time relevant to instant claims (i.e. 2010-2012).  *See* Matthews Depo at 37: 17-25.   Thus, the only remaining inquiry is whether the Defendant's business meets the "interstate commerce" requirements of the FLSA.   Because it is clear that the Defendant's regularly and customarily had two (2) or more employees handling "materials" that had previously moved in interstate commerce, the Defendant is covered by the FLSA. See Knight Decl., at ¶34.  An employee bringing a claim for unpaid overtime under the Fair Labor Standards Act must establish at least one of the following: "individual coverage" **_or_** "enterprise coverage." *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1265-66 (11th Cir. 2006).   Either will

trigger application of the Act. *Id.* Individual coverage lies where the employee is engaged in commerce or the production of goods for commerce. 29 U.S.C. § 207(a)(1). Enterprise coverage exists where the employee works for an enterprise with annual sales in excess of $500,000.00 that is also 1) engaged in commerce or in the production of goods for commerce, **_or_** 2) an enterprise that has employees handling, selling, or otherwise working on goods or materials that have moved in or been produced for interstate commerce. 29 U.S.C. § 203(s)(1)(A).

Under the second prong above, commonly referred to as the "handling" clause, companies that routinely purchase goods or materials that are handled, sold, or otherwise worked on by two or more employees, directly from across state lines, are subject to the FLSA by way of "enterprise coverage." *See Lira v. Matthew's Marine Air Conditioner, Inc.*, 2010 WL 3835002, at *3 (S.D. Fla. Sept. 28, 2010). The term "materials" remains undefined by the statute and, unlike "goods," is not subject to any "ultimate-consumer" exception. *Id.* The Eleventh Circuit has defined "materials" as "tools or other articles necessary for doing or making something." *Polycarpe v. E & S Landscaping, Inc.*, --- F.3d ----, 2010 WL 3398825, at *6 (11th Cir. August 31, 2010).

In *Polycarpe,* the Eleventh Circuit considered six different FLSA cases, all consolidated for the purpose of appeal, to resolve existing controversy regarding several aspects of the Act. In each of the six cases, the district court ultimately ruled in favor of the employer-defendants, concluding that the FLSA did not apply because the employers made their purchases of potentially qualifying "goods" or "materials" after the same had "come to rest" intrastate, and that the nexus to interstate commerce was therefore insufficient to trigger FLSA coverage. *Polycarpe,* 2010 WL 3398825, at *1.

In each case but one, the judgments were vacated and the cases remanded. *Id.* at *10-11.

The Eleventh Circuit held that the "coming to rest" doctrine is inapplicable in the "enterprise coverage" context and made clear that it is the *origin* of the alleged goods and materials, and not any subsequent intrastate purchase that controls. *Id.* at *9, n. 10. ("The inquiry for enterprise coverage under the FLSA is whether the 'goods' or 'materials' were in the past produced in or moved interstate, *not whether they were most recently purchased intrastate.*" (emphasis added)).

Here, the Defendant regularly used foreign marble (i.e. marble from outside of Florida) in the construction of its pools and spas. *See* Knight Decl. at ¶32. To that end, the marble was an essential material which was required to be used in order for Defendant to effectuate its business purpose. *See id.* At all times throughout Plaintiff's employment, Defendant employed two (2) or more employees who handled or otherwise worked on the marble Defendant purchased for use in its installations. *See id.*, at ¶34. Moreover, because all marble is manufactured outside the state of Florida, all of the marble Defendant routinely handled, used, or otherwise worked on was manufactured outside the State of Florida, and necessarily traveled in interstate commerce, prior to Defendant's usage of same to construct its clients' pools. *See id.*, at 33. In light of the fact that Defendants' gross annual revenues exceeded/exceeds the $500,000.00 threshold at all times relevant to the case, and the evidence showing Defendant's employees regularly "handled" a variety "goods" and "materials" that had previously traveled in interstate commerce, as discussed above, the Defendant is an enterprise subject to the coverage of the FLSA.

## V.      Liquidated Damages Are Warranted

The FLSA provides that "[a]ny employer who violates… [29 U.S.C. §207] ***shall*** be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, ***and an additional amount as liquidated damages.*** 29 U.S.C. § 216(b) (emphasis added). An employer seeking to avoid an award of

liquidated damages under the FLSA bears the burden of proving both good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception. *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987); *see also Allen v. Board of Public Educ. for Bibb County,* 495 F3d. 1306 (11th Cir. 2007).

*If* an affirmative defense of good faith is pled, an employer may avoid liquidated damages only by demonstrating that it acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA. *Dybach v. Fla. Dep't of Corr.,* 492 F.2d 1562, 1566 (11th Cir.1991). This determination has both a subjective and objective component. *Id.* The subjective component refers to the employer's actual belief. *See id.* On the other hand, the objective component measures the reasonableness of the employer's belief and appears to "require[] some duty to investigate potential liability under the FLSA." *Barcellona v. Tifany English Pub, Inc.* 597 F.2d 464, 469 (5th Cir. 1979).[2] (Restaurant, which never attempted to meet its burden of showing that its failure to pay minimum wage was both in good faith and predicted upon reasonable grounds, except for its contention that its owners were merely a couple of farmers, acting for the first time as employers, with blind faith in their franchisor, was liable for liquidated damages in connection with its failure to satisfy its obligation to pay its waiters the minimum wage.) "The Act assigns the judge the role of finding whether the employer acted in subjective and objective good faith of liquidated damages purposes." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir.2008)(citing 29 U.S.C. § 260). To establish requisite subjective "good faith" to avoid award of liquidated damages upon finding of actual damages under the FLSA's overtime provision, employer must show that it

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1209 (11th Cir.1981) (en banc), the 11th Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

took active steps to ascertain dictates of FLSA and then to comply with them. *Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132 (2d. Cir. 2008).

Here, Defendant has failed to make the showing necessary to enable the Court to consider awarding anything less than liquidated (double) damages, because Defendant admits that despite its failure to conform with the FLSA, it was well aware of the FLSA's requirement that non-exempt employees are entitled to overtime compensation.   *See* Matthews Depo, at 93: 2-14. Moreover, it is undisputed that in March 2009, before he became the owner of Tri County, current owner Pat Matthews filed a lawsuit against Defendant alleging violations of the FLSA. *See* March 2009 Complaint, attached hereto as **EXHIBIT E;** *see also* Matthews Depo, at 94: 24-95: 23. Approximately two years later, after the case was settled, Pat Matthews returned to work at Tri County and became the owner. *See* Matthews Depo, at 94: 24-95: 23. There is no question that this prior lawsuit placed Defendant on notice of its requirements under the FLSA, and yet Defendant affirmatively chose not to undertake any efforts towards ensuring its pay policies were in compliance with the standards set forth under the FLSA.  To that end, Defendant admits it did not consult with the Department of Labor to establish whether its pay practices were legal, nor did it make any efforts to attend any seminars or informational sessions to ensure appropriate compliance. *See id.,* at 100: 7-18.

Consequently, Plaintiff is entitled to liquidated damages in an amount equal to his damages for unpaid minimum wages and overtime.  *See Bozeman v. Port-O-Tech Corp.*, 2008 WL 4371313 (S.D. Fla. 2008) (awarding liquidated damages in full where Defendant failed to plead good faith as an affirmative defense and failed to meet its burden of proof with regard to same).

## CONCLUSION

No material fact disputes exist in regard to the issues described above, and summary judgment is therefore appropriate in Plaintiff's favor with respect to these issues. Therefore, for the reasons stated above, Plaintiff respectfully requests that the Court enter summary judgment in Plaintiff's favor finding the following: (1) that Plaintiff is not exempt under the FLSA; (2) that Defendant is an enterprise subject to coverage under the FLSA, and (3) Defendant's failure to pay Plaintiff overtime wages was willful, such that Plaintiff is entitled to liquidated damages. Dated this 18th day of April, 2014.

Respectfully submitted,

**/s/ AMANDA E. KAYFUS**
Amanda E. Kayfus, Esq.
Morgan & Morgan, P.A.
FL Bar No. 092805
600 N. Pine Island Road, Suite 400
Plantation, FL 33324
Telephone: (954) 318-0268
Facsimile: (954) 327-3017
Email: akayfus@forthepeople.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of April, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all counsel of record.

**/s/ AMANDA E. KAYFUS**
Amanda E. Kayfus, Esq.